IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SHARON SHIENICE JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 23-693-GBW-EGT |
| | ) | |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Sharon Shienice Jones ("Plaintiff" or "Ms. Jones") appeals *pro se* from an unfavorable decision of the Commissioner of the Social Security Administration ("the Commissioner") denying her application for disability benefits.[1] (D.I. 2). This Court has jurisdiction under 42 U.S.C. § 405(g). Presently before the Court are cross-motions for summary judgment filed by the parties. (*See* D.I. 12 & 13). For the reasons set forth below, the Court recommends that Plaintiff's motion be DENIED and the Commissioner's motion be GRANTED.

## I.    BACKGROUND

### A.    Procedural History

On October 17, 2019, Plaintiff filed for disability benefits with the Social Security Administration ("SSA"), alleging a disability onset date of February 24, 2018. (Tr. at 303-08).[2] Her application was denied initially and upon reconsideration. (*Id.* at 79-87 & 89-96). A hearing was held on April 12, 2022 before Administrative Law Judge ("ALJ") Steven L. Butler. (*Id.* at

---

[1]    Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Frank Bisignano is automatically substituted for Acting Commissioner Kilolo Kijakazi as the Defendant.

[2]    Citations to "Tr." are to the Transcript of Social Security Proceedings filed in this case. (*See* D.I. 6). Page numbers are found in the lower righthand corner of the transcript.

38-69).  At that hearing, Plaintiff amended her alleged disability onset date to September 7, 2019. (*Id.* at 44-45).  Plaintiff's date of last insured for disability benefits is December 31, 2021.  (*Id.* at 18).  The ALJ issued a decision on April 28, 2022, denying benefits on the basis that Plaintiff was not disabled during the relevant time period.  (*Id.* at 16-30).  On April 27, 2023, the Appeals Council denied Plaintiff's request for review of the ALJ's denial decision, thus rendering the ALJ's decision the final decision of the Commissioner.  (*Id.* at 1-7).

Plaintiff appealed *pro se* to this Court on June 26, 2023.  (D.I. 2).  Proceeding *in forma pauperis*, Plaintiff filed her motion for summary judgment on January 17, 2025 (D.I. 12), and the Commissioner filed his cross-motion for summary judgment on February 19, 2025 (D.I. 13 & 14). Plaintiff did not file a reply brief.

### B.    Medical and Work History

As of her amended date of disability onset (September 7, 2019), Plaintiff was 44 years old. (Tr. at 28).  Several years before her disability onset, in February 2016, Plaintiff was involved in a serious motor vehicle accident in which she sustained multiple injuries to her right side.  (*Id.* at 23).  In particular, Plaintiff suffered fractures to her right upper extremity and her right lower extremity, both of which required open reduction surgical repair.  (*Id.*).  Subsequent MRI, X-ray and ultrasound imaging in March and July 2017 showed healing of these injuries.  (*Id.*).  Also before the alleged disability onset, in 2017, MRI imaging of Plaintiff's cervical spine showed degenerative disc disease with multilevel degenerative changes and disc bulging.  (*Id.*).  And in 2019, a lumbar MRI showed compression fractures at L1 and L2, as well as lumbar spondylosis and discogenic disease with L4-L5 disc bulging.  (*Id.*).  Plaintiff also had been diagnosed with degenerative joint disease in both knees but had demonstrated good quad and hamstring strength, with no laxity or instability.  (*Id.*).

Plaintiff has at least a high school education and has past relevant work as an assistant branch manager, branch manager and teller supervisor. (Tr. at 28).

### C.    The ALJ Proceedings and Findings

On April 28, 2022, the ALJ issued a decision denying Plaintiff benefits, concluding that Plaintiff was not under a qualifying disability at any time between the alleged onset date through the date last insured. (Tr. at 29). In doing so, the ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4). The ALJ first found that Plaintiff had not engaged in substantial gainful activity during the relevant time (step one) and that Plaintiff had severe impairments (step two) in the form of "lumbar and cervical degenerative disc disease, status-post right arm/humerus and wrist fracture; right shoulder bursitis; right femur fracture; right leg injury of cutaneous sensory nerve at hip; right hip degenerative joint disease; bilateral knee degenerative joint disease with saphenous nerve entrapment; obesity; and mild neurocognitive disorder." (*Id.* at 18-19). None of Plaintiff's impairments met the severity of those listed in Subpart P, Appendix 1 of 20 C.F.R. Part 404 (step three). (*Id.* at 19-21). Plaintiff was then found to possess the residual functional capacity to perform certain sedentary work but unable to perform any past relevant work (step four). (*Id.* at 21-28). Considering Plaintiff's age, education, work experience and residual functional capacity, the ALJ determined that there existed jobs in significant numbers in the national economy that Plaintiff can perform (step five). (*Id.* at 28-29). The ALJ thus concluded that Plaintiff was not disabled within the meaning of the Social Security Act between the alleged onset date, September 7, 2019, through the date last insured, December 31, 2021. (*Id.* at 29). The ALJ's decision is now the Commissioner's final decision. (*Id.* at 1).

## II.    <u>LEGAL STANDARD</u>

Courts review the Commissioner's factual findings for "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence "means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  In reviewing whether substantial evidence supports the Commissioner's findings, courts may not "re-weigh the evidence or impose their own factual determinations."  *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also Zirsnak v. Colvin*, 777 F.3d 607, 610-11 (3d Cir. 2014).  In other words, reviewing courts must affirm the Commissioner if substantial evidence supports the Commissioner's decision, even if the court would have decided the case differently.

To determine if a claimant is disabled, the Commissioner follows a five-step sequential inquiry.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v).  The Third Circuit has explained this sequential analysis, and the shifting burdens that attend each step, in detail:

> The first two steps involve threshold determinations.  In step one, the Commissioner must determine whether the claimant currently is engaging in substantial gainful activity.  If a claimant is found to be engaging in substantial gainful activity, the disability claim will be denied.  In step two, the Commissioner must determine whether the claimant has a medically severe impairment or combination of impairments.  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.  In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work.  If the impairment is equivalent to a listed impairment the disability claim is granted without further analysis.  If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.  Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work.  The claimant bears the burden of demonstrating an inability to return to his past relevant work.  If the claimant does not meet the burden the claim is denied.

4

> If the claimant is unable to resume his former occupation, the evaluation moves to the final step. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. The Commissioner must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his or her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether he is capable of performing work and is not disabled.

*Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545-46 (3d Cir. 2003) (internal citations omitted).

The analysis is identical whether an application seeks disability insurance benefits or supplemental security income. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 n.3 (3d Cir. 2004).

## III.    **DISCUSSION**

Plaintiff's opening brief is a single page that merely lists her injuries, surgeries and medical conditions, and asks the Court to reconsider the ALJ's decision. (D.I. 12). Specifically, Plaintiff references her multiple orthopedic surgeries, lumbar and cervical disc injuries and resulting pain, arthritis, bursitis and nerve damage in both knees. (*Id.*).[3] Plaintiff states that her life has changed "drastically" since she was involved in the 2016 head-on collision and that now she has "a new normal" that consists of "chronic pain" and "multiple injuries with multiple issue[s]." (*Id.*). Plaintiff's brief contains no citations to the record or case law, and Plaintiff provides no argument or explanation of how the ALJ was wrong. As stated above, the Commissioner filed a cross-motion for summary judgment seeking affirmance of the ALJ's decision (D.I. 13), and Plaintiff did not file a reply brief.

---

[3]    During the ALJ hearing, Plaintiff testified that she had problems with her memory. (Tr. at 50). But Plaintiff does not mention memory issues in her opening brief, instead only focusing on her physical impairments. (*See* D.I. 12). The Court will limit this appeal to only those impairments explicitly raised in Plaintiff's brief.

As an initial matter, Plaintiff's brief fails to comply with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), which provides that the parties' briefs "must support assertions of fact by citations to particular parts of the record."  Although even *pro se* litigants "cannot flout procedural rules," *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013), the Court will nonetheless liberally construe Plaintiff's papers.  *See Erikson v. Pardus*, 551 U.S. 89, 94 (2007).  Under such a liberal reading, the Court understands Plaintiff's appeal to be arguing that (1) the ALJ's determination of Plaintiff's residual functional capacity was not supported by substantial evidence and (2) the ALJ's evaluation of the medical opinions and prior administrative medical findings was not supported by substantial evidence.[4]

### A.       Residual Functional Capacity

The ALJ determined that Plaintiff had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) but with limitations on certain types of movement (kneeling, crawling, climbing ladders, etc.) and mild limitations on use of upper extremities (occasional pushing/pulling or overhead reaching).  (Tr. at 21-22).  Plaintiff's residual functional capacity also included, *inter alia*, some limitation on exposure to extreme temperatures and vibrations, as well as providing for the use of a cane for walking or standing that lasts more than fifteen minutes.  (*Id.*).  Although never stated, the Court will assume that Plaintiff disagrees with the ALJ's determination of Plaintiff's residual functional capacity.  (D.I. 12).  In his brief, the Commissioner argues that the ALJ's residual functional capacity was supported by substantial

---

[4]      Realistically, Plaintiff would not be challenging the ALJ's findings at step one (no substantial gainful activity), step two (severe impairments) or step four (unable to perform her past work).  Plaintiff also does not appear to allege she has a condition presumed severe enough to qualify as a disability (step three).  That leaves only residual functional capacity (within step four) as grounds for Plaintiff's appeal, which in turn affects the availability of other work analysis (step five).

evidence because the ALJ relied on "Plaintiff's medical history prior to the relevant period, her statements and testimony, her treatment (and its efficacy), and the persuasive opinion evidence indicating that Plaintiff was not disabled and could perform a range of sedentary work." (D.I. 14 at 15 (citing Tr. at 21-28)). The Court agrees with the Commissioner.

Specifically, after considering the entire record, the ALJ determined that Plaintiff has a residual functional capacity to:

> to perform sedentary work as defined in 20 CFR 404.1567(a) except she cannot kneel, crawl, and cannot be exposed to hazards defined as climbing ropes, ladders, or scaffolds, using dangerous moving machinery, or being exposed to unprotected heights. The claimant can occasionally climb ramps/stairs, balance, stoop, and crouch as defined by the SCO. The claimant can occasionally push/pull with all extremities. The claimant can occasionally reach overhead with the bilateral upper extremities, and frequently reach in all other directions. The claimant can frequently handle, finger, and feel with the bilateral upper extremities. The claimant requires the use of a cane when standing or walking for more than 15 minutes at a time. The claimant can occasionally be exposed to vibration, extreme heat, extreme cold, wetness, or humidity extremes. The claimant can have no more than occasional concentrated exposure to fumes, odors, dust, gases, and poor ventilation. The claimant can understand, remember, and carry out oral and/or written instructions or tasks that can be learned in 30 days or less and require the exercise of up to occasional independent judgment or decision-making, and can tolerate up to occasional change in work setting or work process. She can meet production requirements that allow her to sustain a flexible and goal-oriented pace, but cannot work in an environment with strict production requirements such as assembly line type of work. She can sustain concentration and persistence for periods of two hours at a time, and repeat after any customary break that may be provided. She cannot travel to unfamiliar places or operate a motor vehicle as part of their work responsibilities.

(Tr. at 21-22).

Although Plaintiff identifies several medical conditions in her opening brief to presumably argue that the ALJ erred in not considering them (*see* D.I. 12), Plaintiff has failed to identify any medical evidence that the ALJ failed to consider or adequately discuss.

First, Plaintiff identifies her "7 major orthopedic surgeries (upper right thigh-rod;) (upper right arm – steal [sic] plate): and the (right hand-screws in wrist along with 2 carpal tunnel release surgery)" as evidence that the ALJ erred. (*See id*.). In his opinion, however, the ALJ adequately discussed and considered Plaintiff's surgeries of the upper and lower extremities. (Tr. at 23 (noting "open reduction internal fixation (ORIF) right distal radius and transscaphoid, transtriquetal perilunate fracture dislocation, revision right carpal tunnel release, and removal of right hand foreign body" and "ORIF of right femur, ORIF of right humeral shaft fracture, and required revision ORIF of right subtronchanteric femur and right femoral shaft fractures")).

Next, Plaintiff states that her "L1 & L2 disc in [her] back was affected along with a neck injury C3-C7," "herniated, bulging disc" and "severe left foraminal stenosis on the left side of [her] body compressing the nerve on [her] spine." (D.I. 12). But again, the ALJ's decision considered Plaintiff's L1 and L2 and C3-C7 vertebrae injuries, herniated disc and foraminal stenosis. (Tr. at 23-24 (noting Plaintiff's "L1 and L2 superior endplate compression fractures," "moderate degenerative disc disease at C5-C6 and mild degenerative disc disease at C3-C4 and C6-7 with osseous encroachment of the foramina at C3-C4 and C5-6," "prominent posterial disc protrusion/herniation at C3-4" and "moderate bilateral foraminal stenosis")). Plaintiff also states that she suffers from arthritis, bursitis and nerve damage (D.I. 12); yet the ALJ adequately considered and discussed those conditions as well. (Tr. at 18-19 (including in Plaintiff's severe impairments "right shoulder bursitis . . . right leg injury of cutaneous sensory nerve at hip; right hip degenerative joint disease; bilateral knee degenerative joint disease with saphenous nerve entrapment") & 22-23).

Lastly, Plaintiff references her symptoms of chronic pain as well as numbness, tingling and sensitivity in her hands, which she testified about at the ALJ hearing. (D.I. 12; *see also* Tr. at

50-52 & 53-60).  In accordance with SSR 16-3p and 20 C.F.R. § 1529,[5] the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms but explained that her statements with respect to intensity, persistence and limiting effects were "not entirely consistent" with the medical and other evidence of record.  (Tr. at 23).  Again, the ALJ adequately discussed Plaintiff's subjective symptoms of chronic pain and numbness, tingling and sensitivity in her hands.  (*Id*. at 22 (noting that Plaintiff "testified to chronic pain in her neck, back, lower back, left lower extremity, both knees, hip area, arms, and hands along with sensitivity, weakness, and difficulty touching things")); *see also Chandler*, 667 F.3d at 359 (noting that ALJ must consider claimant's statements regarding symptoms but "is not required to credit them" (citing 20 C.F.R. § 404.1529(a))).  But the ALJ explained that the self-reported severity of symptoms was not consistent with "objective imaging and exam findings" during the relevant timeframe.  (Tr. at 23).  He then set forth in detail those prior imaging and physical exams, the latter of which "continued to show mostly normal musculoskeletal and neurological exams." (*Id.* at 24).  The ALJ did not disregard any relevant evidence.

In sum, Plaintiff asks the Court to reweigh the evidence considered by the ALJ and reach a different conclusion as to her residual functional capacity.  The Court may not do so.  *See Chandler*, 667 F.3d at 359 ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations.").  Because the ALJ adequately considered the evidence of record and

---

[5]    SSR 16-3p requires the ALJ to first "consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain" and to then "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities for an adult or to function independently, appropriately, and effectively."  SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017); *see also* 20 C.F.R. § 404.1529.

provided sufficiently detailed reasoning for his conclusions, the ALJ's residual functional capacity determination is supported by substantial evidence as required by 42 U.S.C. § 405(g).

### B.    Medical Opinions and Prior Administrative Medical Findings

Read liberally, Plaintiff's brief could also be interpreted as arguing that the ALJ erred in evaluating (and crediting) the medical opinion evidence and prior administrative medical findings of record.  (D.I. 12).  In his cross-motion for summary judgment, the Commissioner argues that the ALJ's evaluation of those opinions and findings is supported by substantial evidence.  (D.I. 14 at 16-18).  The Court agrees with the Commissioner.

ALJs must articulate how persuasive they find all medical opinions and prior administrative medical findings of record.    20 C.F.R. § 404.1520c(b).    In determining persuasiveness, the most important factors for the ALJ to consider are supportability (opinion or finding is supported by "objective medical evidence" and explanation) and consistency (opinion or finding is consistent with evidence from other medical and non-medical sources of record).  20 C.F.R. §§ 404.1520c(b)(2) & (c)(1)-(2); *Zabrowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024).  The ALJ "need not reiterate the magic words 'support' and 'consistent' for each doctor," but instead may "weave supportability and consistency throughout [their] analysis of which doctors were persuasive." *Zabrowski*, 115 F.4th at 639-40.  "[I]t is not for the Court to re-weigh the various medical opinions in the record.  Instead, the Court's review is limited to determining if there is substantial evidence to support the ALJ's weighing of those opinions." *Podsiad v. Astrue*, C.A. No. 07-841-SLR-LPS, 2010 WL 662211, at *18 (D. Del. Feb. 22, 2010) (citing *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986)).

The ALJ started with the medical opinions regarding Plaintiff's physical impairments. (Tr. at 26-27).  First, the ALJ explained that he was not persuaded by the August 2021 medical

opinion of Joseph Mesa, MD,[6] regarding Plaintiff's ability to sit and stand because it "is not supported by his own examination findings that do not indicate limitations that would be supportive of the opinion." (*Id.* at 26 ("Additionally, I do not find the limitations in lying down, off task, or absences supported by explanation.")).  Second, the ALJ explained that he was persuaded by the May 2020 medical opinion of Darrin Campo, MD, and December 2020 medical opinion of Michael Borek, DO,[7] regarding Plaintiff's functional limitations because they are "well supported by detailed explanation and consistent with the evidence except additional limitations were indicated based on ongoing treatment and testimony." (*Id.* at 26).  The ALJ noted that, despite Plaintiff's well-documented injuries, her "exams frequently indicated intact strength or only slightly reduced strength in the right lower extremity of 4 or 4+/5 and only intermittently antalgic gait with use of bilateral knee braces." (*Id.*).

Third, the ALJ explained that he was not persuaded by the December 2017 medical opinion of Darrin Campo, MD, and February 2018 medical opinion of Leo Potera, MD,[8] that Plaintiff

---

[6]    Specifically, Dr. Mesa opined that Plaintiff "could not remain seated for six hours out of an eight-hour period and could not remain on her feet for two hours out of an eight-hour period" and "would have periods of exacerbation that would require her to lie down four hours out of an eight-hour day, would be off task at least 20 percent of the workday, and would be absent from work for a minimum of 30 days out of a work year." (Tr. at 26 (citing *id.* at 2496-99)).

[7]    In May 2020 and December 2020, respectively, Drs. Campo and Borek opined that Plaintiff "could lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk four hours out of an eight-hour workday, sit six hours out of an eight-hour workday, occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, occasionally kneel, crouch, and crawl, and frequently balance and stoop" and should "avoid concentrated exposure to vibration and hazards." (Tr. at 26 (citing *id.* at 79-87 & 89-96)).

[8]    In December 2017 and February 2018, respectively, Drs. Campo and Potera opined that Plaintiff "could perform a range of light work except with pushing/pulling limited to 10 pounds occasionally and frequently, occasional postural activity except never climbing ladders, ropes, and scaffolds, frequent handling and fingering with the right upper extremity, and should avoid concentrated exposure to extreme cold; wetness, humidity,

could engage in light work because they "are not supported by their limited review of the record" and are "inconsistent with more recent State agency evaluations that are more supportive of a sedentary residual functional capacity." (Tr. at 26 (citing *id*. at 79-87 & 89-96)). Fourth, the ALJ explained that he was unpersuaded by the March 2017 medical opinion of Michael Principe, DO, that Plaintiff is unable to drive because it was "not supported by its having been provided well before the relevant period" and "inconsistent with the claimant's testimony that she continues to drive distances of five miles or less." (*Id*. (citing *id*. at 1417)). Lastly, the ALJ explained that he was not persuaded by Dr. Principe's prescription of a cane in August and September 2016 because it was "not supported by subsequent records from Dr. Principe or consistent with subsequent records from other provides that do not continue to mention use of a cane." (*Id*. at 27 (citing *id*. at 2299 & 2320)).

After reviewing the foregoing medical opinions regarding Plaintiff's physical impairments, the ALJ turned to the findings of state agency psychological consultants regarding Plaintiff's mental impairments. (Tr. at 27-28). First, the ALJ explained that he was not persuaded by the September 2019 medical opinion of Richard Filippone, Ph.D.,[9] that Plaintiff suffers from mild mental impairments because it was "not supported by evaluation findings or consistent with subsequent evaluation findings of State agency opinions." (*Id*. at 27 ("The claimant has a cognitive disorder, and albeit mild, the limitations in recalling information, persisting at task, and recalling information would support moderate limitations in the mental areas of understanding,

---

vibration, fumes, odors, dusts, gases, poor ventilation, and hazards." (Tr. at 26 (citing *id*. at 121-35 & 137-50)).

[9]   Dr. Filippone opined that Plaintiff "would have mild difficulties persisting at task, recalling information, and working on pace with no medically necessary restrictions for work activities or functional impairment." (Tr. at 27 (citing *id*. at 2531-41)).

remembering, and applying information and concentrating, persisting, or maintaining pace.")).

Second, the ALJ explained that he found persuasive the October 2020 medical opinion of James

Langan, Psy.D.,[10] regarding Plaintiff's ability to focus and learn new information because it was

"supported by Dr. Langan's evaluation findings and narrative and more consistent with the prior

evaluation also noting a cognitive disorder and with the State agency opinions." (*Id*.).

Third, the ALJ explained that he found the July 2020 medical opinion of Jane

Curran, Ph.D., and December 2020 medical opinion of Alex Siegal, Ph.D.,[11] that Plaintiff suffers

from moderate mental impairments "most persuasive as they are best supported by explanation

and most consistent with the objective evidence." (Tr. at 27 ("Both neuropsychological

evaluations revealed a mild cognitive disorder with limitations in recalling or learning information,

working on pace, and persisting in tasks and productivity.")). Fourth, the ALJ explained that he

was unpersuaded by the December 2017 medical opinion of Christopher King, Psy.D., that

Plaintiff's mental impairments are not severe because it was "not supported by Dr. King's limited

review of the evidence" and "inconsistent with the more recent psychiatric review techniques by

Dr. Curran and Dr. Siegel and the neuropsychological evaluations." (*Id*. (citing *id*. at 121-35)).

Finally, the ALJ explained that he was not persuaded by the November 2017 medical opinion of

Joseph Keyes, Ph.D., that Plaintiff suffers from a mixture of mild and moderate mental

---

[10]    Dr. Langan opined that Plaintiff "would have limitations in her ability to apprehend and learn new information, focus her attention for more than several minutes in duration, quickly and reliably access verbal information in the service of self-expression and communication with others, processing information quickly and accurately and will be susceptible to fatigue limiting her task persistence and productivity." (Tr. at 27 (citing *id*. at 2542-53)).

[11]    Drs. Curran and Siegal opined that Plaintiff "has a moderate limitation in understand, remember, or apply information and mild limitation in the mental areas of interact with others, concentrate, persist, or maintain pace, and adapt or manage oneself." (Tr. at 27 (citing *id*. at 79-87 & 89-96)).

13

impairments as "not supported by its basis on a remote one-time evaluation from 2017 or consistent with subsequent evidence." (*Id*. at 27-28 ("The record shows no mental health treatment since her denial. Moreover, she has not been taking medications for a mental health condition.")).

In sum, the ALJ provided a thorough review and analysis of all the medical opinions and prior administrative medical findings of record regarding Plaintiff's physical and mental conditions. *See Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981) ("[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice."). In doing so, the ALJ reasonably articulated his reasons for finding certain medical opinions and prior administrative medical findings more persuasive than others, expressly evaluating each for supportability and consistency. *See Joseph P. v. Comm'r of Soc. Sec.*, No. 21-13524 (GC), 2023 WL 1929945, at *5 (D.N.J. Feb. 10, 2023) ("The new regulations reflect a 'reasonable articulation standard' that 'does not require written analysis about how [the ALJ] considered each piece of evidence[;]' rather, the decision need only 'allow a subsequent reviewer . . . to trace the path of an adjudicator's reasoning.'" (quoting 82 Fed. Reg. 5844-01, at 5858 (Jan. 18, 2017))). Nothing more is required here. The ALJ's evaluation of the medical opinion and prior administrative medical findings – and his ultimate conclusions flowing therefrom – meet the substantial evidence standard required by 42 U.S.C. § 405(g).

## IV.    CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's motion for summary judgment (D.I. 12) be DENIED and the Commissioner's cross-motion for summary judgment (D.I. 13) be GRANTED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b)(1) and District of Delaware Local Rule 72.1. Any objections to the

Report and Recommendation shall be limited to ten (10) double-spaced pages and filed within fourteen (14) days after being served with a copy of this Report and Recommendation. *See* FED. R. CIV. P. 72(b)(2); *see also* FED. R. CIV. P. 6(d). Any responses to the objections shall be limited to ten (10) double-spaced pages and filed within fourteen (14) days after the objections. Failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which is available on the court's website, https://www.ded.uscourts.gov.

Dated: March 31, 2026

_____
UNITED STATES MAGISTRATE JUDGE

15